THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JAMES ECONOMY, Defendant-Appellee.

Fourth District   No. 4—93—0499

Opinion filed March 25, 1994.

Lawrence R. Fichter, State's Attorney, of Decatur (Norbert J. Goetten, Robert J. Biderman, and Charles F. Mansfield, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Gregory L. Barnes, of Decatur, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Defendant James Economy filed a motion to suppress evidence seized during a warrant-authorized search of his residence. The circuit court of Macon County granted defendant's motion on May 26, 1993, finding the search was unreasonable "in both the manner in which the Search Warrant was obtained and how it was executed." The State filed its notice of appeal and certificate of substantial impairment on June 8, 1993, contending the trial court's finding on the motion to suppress was manifestly erroneous. We reverse and remand.

On February 25, 1993, a search warrant was issued by Judge Scott B. Diamond authorizing the police "to search the person of James Economy and a two[-]story, single[-]family residence located at 544 South 21st Street, Decatur, Macon County, Illinois," and

"to seize *** any and all controlled substances, any paraphernalia used in the possession or consumption of controlled substances, any documents relating to the possession, consumption or acquisition of controlled substances, any currency or thing of

value used in the acquisition of controlled substances, and any records or documents establishing ownership or possession of the premises."

As a result of this search, the following items were seized from defendant's bedroom: "Approx. 35 baggie corners containing suspected cocaine. Three pieces of white chunky substance. One beer can smoking device. Two documents." The presence of cocaine in the baggies, beer can, and the chunky substance was confirmed.

The complaint for the search warrant was submitted by John Doe (assumed name) and Rick McElroy. The complaint alleged (1) John Doe was familiar with the appearance and packaging of cocaine and paraphernalia used in the consumption and possession of cocaine; (2) John Doe knew defendant to reside at the address listed in the complaint; (3) John Doe knew defendant and had been inside defendant's house sometime between the dates of February 10, 1993, and February 24, 1993, during which time he observed what appeared to be cocaine and the paraphernalia used in the possession and consumption of cocaine; (4) Rick McElroy was an investigator assigned to the narcotics division of the Decatur police department and was familiar with the appearance and packaging of cocaine and the paraphernalia used in consumption and possession of cocaine; (5) John Doe had described what he had observed in defendant's residence and Rick McElroy knew this to be consistent with what he was familiar with as cocaine; (6) Rick McElroy had been involved in defendant's previous arrest for possession of cocaine (after which defendant had pleaded guilty to the offense of possession of a controlled substance, namely cocaine, prior to February 10, 1993); (7) defendant had admitted to Rick McElroy, prior to his previous arrest, that he was addicted to the use of cocaine; and (8) Rick McElroy knew at the time of defendant's arrest in October 1992 a search warrant of defendant's residence had been executed, and paraphernalia used in the consumption of cocaine was recovered with a residue of what later tested positive for cocaine.

The building at 544 South 21st Street in Decatur contains defendant's law office as well as his personal residence. Defendant described his law office as consisting of three rooms on the first floor of the building. The first room, through the front entrance of the house, is a reception area with a secretarial desk, dictaphone, computer, and telephone. The next room, through an archway, is a conference room with a conference table, two desks, a typewriter and various legal books, manuals, and files. This room contains a file cabinet with client files. Through a set of double doors is a third room with more office furniture, office equipment, and another file cabinet

with more client files. Defendant admitted there was no sign on the front door of his building indicating the presence of a law office. The first floor also contains a kitchen. The second floor has two empty bedrooms, defendant's bedroom, and a bathroom.

Darren Barnes was employed part-time by defendant as a private process server and caseworker. He described the first floor of defendant's house as containing a kitchen, dining room, living room, and office. Barnes testified the living room contained a secretary's desk and the dining room contained some filing cabinets. He further testified defendant's office had a fax machine. Barnes acknowledged there were no dividers separating the law office from the rest of the house except for a "partition door" between the office and the dining room.

Officer Rick McElroy testified he knew a portion of defendant's residence contained his law office and that nothing distinguished the law office from the rest of the residence. McElroy testified that a confidential source had told him that she had delivered cocaine to defendant several times at his residence. She would enter the law office and place the cocaine under papers on defendant's desk. Defendant would take the cocaine out from underneath the papers, replace it with money, and the informant would retrieve the money and then leave. McElroy did not inform Judge Diamond that defendant's residence contained a law office which possibly contained drugs because the police wanted to search the entire house. He also had information that defendant's bedroom contained the illegal drugs. McElroy was familiar with the types of locations used to hide narcotics. He testified that people hide drugs anywhere they think it might not be found, including drawers, under dressers, under carpeting or in the ceiling.

Officer Edward Root assisted in the search of the premises at 544 South 21st Street. He searched defendant's bedroom, an adjacent walk-in closet, kitchen, laundry room, bathroom, dining room/ conference room, and law office area. He admitted prying open the locked file cabinet because he could not locate the keys. He looked through the file folders because he believed, through experience, that filing cabinets and files are good places to hide narcotics. He testified he looked into the files for the narcotics; however, he did not examine the documents in the files to see what the cases were about. He did not seize any papers from the files but did take some documents that had been mailed directly to defendant. The files were scattered on the floor and not put back into their respective file folders because that would have taken too much time.

Defendant returned to his house from snowmobiling on February

26, 1993, at approximately 3 a.m. His house and law office were in total disarray. Files were scattered all over the office and a locked file cabinet had been pried open. The search warrant was taped to the ceiling of the archway between the front entryway and the conference/dining room.

Defendant filed his motion to suppress evidence on April 1, 1993, and an amended motion to suppress evidence was filed on May 6, 1993. A hearing was held on May 6, 1993, and the trial court entered an order granting the motion to suppress on May 26, 1993. The trial court believed the question presented to it was

> "whether the entry into the premises and the search thereof in the present case was unlawful, resulting in an unreasonable and unlawful search and seizure in violation of the United States Constitution, the Constitution for the State of Illinois and the laws of the State of Illinois because of both the manner in which the Search Warrant was obtained and how it was executed."

The court noted the question was posed in light of the fact that the search warrant was used to conduct a general search of defendant's law office, which was contained in his residence, and to seize certain articles from the bedroom area in such residence.

The court first noted that a law office is not exempt from lawful searches but special care should be taken to avoid unnecessary intrusions upon the attorney-client communications, the privilege against self-incrimination, and the right of privacy. The court believed the evidence presented in this case did not indicate that the government acted responsibly in obtaining the search warrant or in executing the search warrant because it knew from prior experience that the residence in question contained defendant's law office, but did not say with any particularity in the search warrant the area or the articles to be searched and seized, nor did it make any attempts to safeguard the lawyer's communications, client privacy, and client privilege against self-incrimination. The court noted there were no Illinois cases on this exact issue and thus found the authority cited from other jurisdictions, both State and Federal, needed to be considered in resolving this issue.

The court stated the government must act in a responsible manner in obtaining a search warrant when it is known that the area to be searched contains a law office and it must also be reasonable and responsible in the execution of that search. Since the officers knew, prior to the search and prior to obtaining the search warrant, that the law office was the target of the search, but omitted that fact to the issuing judge, that judge had no opportunity to impose any restrictions upon the execution of the warrant to assure the preser-

vation of the attorney-client privilege, the privilege against self-incrimination, or the right of privacy enjoyed by defendant's clients. The court concluded:

> "Because [defendant] was the subject of an unreasonable search on February 25, 1993, both in the manner in which the search warrant was obtained and how it was executed, all evidence obtained as the result of that unlawful search and seizure must be suppressed. The fact that the evidence recovered was found in an upstairs bedroom of the residence, which was not part of [defendant's] law office wherein no problem of client confidentiality existed, does not save the unreasonable action taken by the governmental agents in the present case."

On appeal, the State essentially raises two arguments. First, the State contends the trial court's suppression of the evidence was in conflict with its earlier ruling denying defendant's motion for a *Franks* hearing (see *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674), and the trial court exceeded the bounds of the exclusionary rule when it suppressed the evidence because the police officers' actions in searching the law office were objectively reasonable. The other argument raised by the State is that the allegedly tainted part of the warrant should have been severed, and since the evidence was seized from the lawful portion of the search warrant, it should not have been suppressed.

The purpose of the *Franks* rule is to allow limited challenges to the veracity of statements and complaints for search warrants and to allow, as a sanction, suppression of seized evidence where an officer has committed fourth amendment violations by using false statements to support the search warrant. (*People v. Lucente* (1987), 116 Ill. 2d 133, 153, 506 N.E.2d 1269, 1277.) The defendant must make a substantial preliminary showing that a false statement was knowingly or intentionally included in the affidavit or with reckless disregard for the truth *and* if the allegedly false statement is necessary for a finding of probable cause, a hearing is required. (*Franks*, 438 U.S. at 171, 57 L. Ed. 2d at 682, 98 S. Ct. at 2684; *People v. Edwards* (1991), 144 Ill. 2d 108, 131, 579 N.E.2d 336, 344.) To establish the substantial preliminary showing, the defendant's challenge must include allegations of deliberate falsehood or reckless disregard for the truth, and these allegations must be accompanied by an offer of proof. A deliberate omission of a material fact is also a reckless disregard for the truth for *Franks* purposes. *People v. Stewart* (1984), 105 Ill. 2d 22, 43, 473 N.E.2d 840, 850.

In his motion for a *Franks* hearing, defendant alleged the information in the complaint for the search warrant by John Doe was inaccurate and false because:

"(a) Said John Doe had not been present within the time stated under oath.

(b) Said John Doe had not seen drugs, drug paraphernalia or controlled substances in the premises within the time stated under oath."

Defendant further alleged that within 36 hours prior to the execution of the search warrant, members of the Decatur police department had responded to a domestic violence dispute at his home during which an inspection of the premises revealed no controlled substances or any drug paraphernalia. Defendant concluded this inaccurate and false information put into question the reliability of John Doe such that he was entitled to a *Franks* hearing.

In denying defendant's motion, the trial court stated:

"The allegations of that Motion are not allegations of a deliberate falsehood or of a reckless disregard for the truth. They are saying that the informant is inaccurate and false; that the allegations of a deliberate falsehood or of a reckless disregard for the truth, are lacking and there's no allegations of a deliberate falsehood or disregard for the truth on the part of the government agent. ***

Finally, *** there remains sufficient content of the Warrant's Affidavit to support a finding of probable cause, [so] no hearing is required."

The court concluded that even if the paragraphs in question were set aside, there still remained sufficient allegations in the complaint, which were presented to the issuing judge, to find probable cause. Accordingly, the trial court ruled:

"[D]efendant has failed to make a substantial preliminary showing of a deliberate attempt to withhold information or of the furnishing of deliberately false information or a reckless disregard for the truth. Therefore, the defendant's motion for a *Franks* Hearing is denied."

The State contends the trial court's conclusion that the search warrant and search were unreasonable because the issuing judge had not been informed that defendant's law office was at his residence is incompatible with his decision to deny the motion for a *Franks* hearing. Noting that the testimony at the hearing on the motion for a *Franks* hearing revealed to the trial court that defendant maintained his law office at his residence, and the issuing judge was not made aware of this fact at the time he issued the search warrant, the State concludes "if the deliberate omission [regarding the location of defendant's law office] does not merit a *Franks* hearing, it cannot permit the suppression of evidence."

■ Initially, we note that although the trial court was presented

with the testimony that defendant was a lawyer and maintained his law office at his residence, defendant did not raise the failure to inform the issuing judge of these facts as a basis to grant the *Franks* hearing. While the admission of these facts might constitute a reckless disregard for the truth for *Franks* purposes, this omission in no way affected a finding of probable cause to issue the search warrant. The complaint for the search warrant contained statements showing that John Doe had been in defendant's residence between February 10, 1993, and February 24, 1993, and had seen what appeared to be cocaine and paraphernalia used in the possession and consumption of cocaine at defendant's residence. As the trial court noted, even setting aside the questionable paragraphs, probable cause existed to issue the search warrant. The trial court did not deny the motion for a *Franks* hearing based on the failure to inform the issuing judge of the location of defendant's law office. Therefore, there is no inconsistency between the denial of the motion for a *Franks* hearing and the granting of the motion to suppress.

Neither the State nor defendant alleges there was no probable cause to issue the search warrant. Rather, the parties focus on the scope of the search warrant and whether the police exceeded that scope in executing the search. Thus, we find the issue presented here to be whether the police officers exceeded the scope of the search warrant by searching the law office portion of defendant's residence.

■ Defendant, and the State, to a lesser extent, refer to several Federal cases which addressed the issue of searches of law offices. Initially, we note that these cases are merely persuasive authority and are in no way binding upon this court. We further find them factually distinguishable. In those cases, the search warrants were specifically for documents directly relating to the attorney and his law practice. Those courts focused on the attorney-client privilege and the danger of its violation by the police officers who conducted the search. The very nature of the items to be seized necessitated the police officer's dissemination of the information in the files. (See, for example, *Klitzman, Klitzman & Gallagher v. Krut* (3d Cir. 1982), 744 F.2d 955 (where the court held the law office was entitled to a preliminary injunction compelling the return of certain seized materials, specifically 2,000 client files and numerous financial documents); *Law Offices of Bernard D. Morley v. MacFarlane* (Colo. 1982), 647 P.2d 1215 (where the materials seized were client files and corporate books).) In contrast, the search warrant here was for controlled substances and related paraphernalia. The only documents to be seized related to the ownership of the house. Thus, we find those cases inapplicable to the issue presented by this appeal.

The fourth amendment only proscribes searches and seizures which are unreasonable. Whether a particular search is reasonable depends on the facts and circumstances giving rise to the search as well as the nature of the search itself. This determination must be made by balancing its intrusion on an individual's fourth amendment interests against the promotion of legitimate governmental interests. (*King v. Ryan* (1992), 153 Ill. 2d 449, 457, 607 N.E.2d 154, 158.) The proper approach for evaluating compliance with the fourth amendment is to objectively assess the officer's actions in light of the facts and circumstances before him at the time without regard to his underlying intent or motivation. *People v. Hoskins* (1984), 101 Ill. 2d 209, 213-14, 461 N.E.2d 941, 943.

A complaint for a search warrant must describe with particularity the place or persons, or both, to be searched and things to be seized. (Ill. Rev. Stat. 1991, ch. 38, par. 108—3(a).) The test for the sufficiency of the description is whether the place or person is so described as to leave the officers no doubt and no discretion as to the premises or persons to be searched. The purpose of this requirement is to prevent the issuance of general warrants. (*People v. Velez* (1990), 204 Ill. App. 3d 318, 328, 562 N.E.2d 247, 253.) Whether a warrant satisfies the requirements of particularity is determined on a case-by-case basis. The degree of particularity required varies with the nature of the case and the material or items to be seized. (*People v. Rixie* (1989), 190 Ill. App. 3d 818, 827, 546 N.E.2d 52, 58.) In looking for items named in a search warrant, the officers are free to search anywhere the object of the search could reasonably be expected to be found. *People v. Brown* (1987), 153 Ill. App. 3d 307, 310, 505 N.E.2d 405, 408.

The warrant described the area to be searched as "a two[-]story, single[-]family residence located at 544 South 21st Street, Decatur, Macon County, Illinois." A reasonable reading of the warrant indicates that it encompassed the entire building located at that address. Moreover, defendant readily admits there is no separate designation to indicate that part of the first floor of this building was his law office. His own employee described a living room and a dining room, rather than a reception area and a conference room as he described it. Thus, it was reasonable to search the entire building for the controlled substances since they could have just as easily been located in the law office part of the building as well as the residential part. The testimony by Officer Root indicated that locked file cabinets are good hiding places for controlled substances, as are file folders. He also indicated he did not look at the documents contained in the files; thus, no attorney-client privilege or any other right was violated.

■ Finally, the State contends that the allegedly invalid portion

of the search warrant and the search of the law office can be severed from the valid part of the search warrant, namely, the search of the defendant's residence. Since the controlled substances and related paraphernalia were found in defendant's bedroom, the State concludes the trial court wrongly suppressed this evidence. We need not address this issue because we have concluded the search of defendant's law office was reasonable and proper.

Generally, a court of review will not reverse a trial court's determination on a motion to suppress unless it is manifestly erroneous. However, where a trial court grants a motion *in limine* based upon its analysis of the law, we review its decision *de novo*. (*People v. Garriott* (1993), 253 Ill. App. 3d 1048, 1050, 625 N.E.2d 780, 782-83.) The search of defendant's law office was reasonable and proper and the motion to suppress should not have been granted.

For the reasons stated, we reverse the order of the circuit court of Macon County granting defendant's motion to suppress and remand for further proceedings consistent with this opinion.

Reversed and remanded.

LUND and GREEN, JJ., concur.